## Hatfield's Estate.

*Decedents' estates—Claim for services—Housekeeper—Domestic service—Family relation—Presumption of payment.*

A claim against a decedent's estate for services as housekeeper will not be sustained where it appears that there was no express contract to pay for such services, that the claimant was a sister-in-law of the decedent, and that she lived in the family of the decedent and performed the ordinary services of a domestic in the household. The presumption of payment of the wages of domestics at stated periods is applicable to such a case.

Argued April 15, 1912. Appeal, No. 62, April T., 1912, by Martha Dixon, from decree of O. C. Fayette Co., Dec. T., 1910, No. 57, dismissing exceptions to adjudication in Estate of Elias Hatfield, deceased. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Exceptions to adjudication.

WORK, P. J., filed the following opinion:

Elias Hatfield died January 26, 1910, leaving a will dated May 6, 1909, probated January 29, 1910, and registered in Will Book 16, p. 33, in which he disposed of his entire estate and appointed John F. Hess of Uniontown, Pa., and Elias H. Holstine of Fairchance, Pa., executors. The said Elias H. Holstine filed his declination as executor at the time of the probate of the will. At the above

number and court the executor John F. Hess filed his first and final account showing total receipts of $15,942.68, and debts and expenses of administration $1,151.65, leaving a balance in the hands of the executor of $14,791.03. To this account, Miss Martha Dixon filed an exception and claim for services as housekeeper for decedent from June 10, 1905, to January 29, 1910, at the rate of $5.00 per week, amounting to $1,215. Considerable testimony was taken, which testimony is in brief, as follows: One witness testified that decedent "told me he would have to send for Miss Dixon, . . . . said Martha would have to come and take care of Mrs. Brown." A number of other witnesses testified as to the character of the services performed, and that claimant was faithful and efficient. The testimony as to the value of the services ranged from $5.00 to $9.00 per week. None of the witnesses testified to any contract of employment and none testified to any declarations made by decedent relative to the compensation claimant was to receive or as to the time or terms of payment. To this the estate defended on the following grounds: First, that there was no contract, either express or implied, to pay wages; second, that the family relation existed in this case; and third, that there is a presumption of payment of the wages of domestics at stated periods, viz.: weekly, biweekly or monthly. It is not claimed that there was any express contract. Was there an implied contract? In the case of Curry v. Curry, 114 Pa. 367, Justice TRUNKEY, speaking for the court, says: "The performance and receipt of services generally raises an implied promise by him who receives to compensate him who performs, but the implication may be rebutted. When the parties are parent or child, or members of the same family, the relationship excludes the implication of a promise." The relation of parent and child did not exist in this case, but the relation of brother-in-law and sister-in-law did exist. The claimant lived in this home on a former occasion for several years. There is nothing here to show that she gave up a paying position or sacri-

ficed anything to accept this position; on the other hand, the evidence shows that claimant lived with her brother-in-law in the same relation in which members of the same family ordinarily live, each contributing money or labor to the common benefit, the one desiring a home, the other desiring some one to look after the home, and without any understanding or expectation of one receiving anything further from the other. The family relation being thus established, no promise would be implied. The testator, in his will, devised to the claimant, as follows: "Farther it is my will that Miss Martha Dixon who now has charge and care of the said Mary Ethel Brown shall have a home in the said home residence during her natural lifetime if she so wishes to make her home there the balance of her life." The claimant accepted the devise and is enjoying its benefits to-day. This devise, in our view of the case, strengthens the view we have taken of the family relation and weakens the cause of the claimant.

For a number of years before his death, Mr. Hatfield lived in a modest but comfortable home in the village of New Salem. His family consisted of a little granddaughter Mary Ethel Brown, Miss Dixon and himself. She alleges that she was employed as a housekeeper. It is the character of the services performed and not what the claimant calls herself that determines her status, whether as housekeeper or domestic servant. From the size of the home and family and from the evidence in this case, it is apparent that there was no necessity for more than one person to do the work for the family, and that claimant did the ordinary work of a house servant, and is therefore within the rule that servants' wages are presumed to be paid periodically: Taylor v. Beatty, 202 Pa. 120. In the case of Carpenter v. Hays, 153 Pa. 432, Justice MITCHELL speaking for the court, says: "The English rule in regard to wages has long been settled. It is founded on the habits and usages of the people, the solid foundation of all common-law presumptions of fact. The same habits and usages obtain in this country, and the same rule was

therefore adopted in McConnell's App., 97 Pa. 31, and is now the settled law of the state: Houck v. Houck, 99 Pa. 552; Webb v. Lees, 149 Pa. 13. The presumption grows stronger as each period of payment goes by." In the case of Gregory v. Com., 121 Pa. 611, it is said: "The presumption will gather strength with each succeeding year, the evidence to overthrow which, must, of course, be correspondingly increased." The law seems to be well settled in this state that where a person serves in the capacity of a domestic and where no demand for payment is made for a considerable period after the termination of the services, the inference is "either that the wages have been paid or the service was performed on the footing that no payment was to be made:" Houck v. Houck, 99 Pa. 552. The presumption that the wages of domestics are paid at certain periods, viz.: weekly, biweekly, or monthly, is a presumption of fact, "in the nature of a receipt written by the hand of time," but is liable to be rebutted by satisfactory and convincing evidence, but until so rebutted, it is a binding rule. This is especially true when the claim is not entered until after the debtor's death, as was the fact in this case, and in view of the further fact that Elias Hatfield was fully able at all times to pay his debts. The testimony does not show that any demand for the payment of wages was made during the time the labor was being performed. It appears that the first demand for wages was made on the executor some time after Mr. Hatfield's death. The universal desire to enjoy what is our own is enough to make men enforce the payment of honest debts which they know to be due them. And it is not presumed that any will disregard this desire for any unreasonable time; however, if he does, he must give good reasons for it. There was no evidence showing payments made by the decedent or of demand made for same during his life. The claimant did not even attempt to prove a contract of employment.

It is contended that claimant had an estate of about $3,000 during the time she worked for Mr. Hatfield, and

454 HATFIELD'S ESTATE.

Opinion of Court below—Opinion of the Court. [50 Pa. Superior Ct.

therefore did not need her wages for maintenance. On the other hand the record does not disclose the fact that during that time she ever spent a dollar of her own money for support or maintenance.

From the evidence, we find as follows: First, that there was no express contract to pay wages; second, that the family relation existed in this case, thus rebutting any implied promise; third, that the claimant performed the ordinary services of a domestic in this home, and that the presumption of payment of the wages of domestics at stated periods, viz.: weekly, biweekly or monthly, arises in this case. The exceptions are therefore overruled and dismissed and the claim refused.

*Error assigned* was the decree of the court.

*D. M. Hertzog*, with him *R. M. Carroll*, for appellant, cited: Smith v. Milligan, 43 Pa. 107; Curry v. Curry, 114 Pa. 367; Shumberger v. Hey, 7 Pa. Superior Ct. 206; Horton's App., 94 Pa. 62; Miller's App., 100 Pa. 568; Shubart's Est., 154 Pa. 230; Gerz v. Demarra, 162 Pa. 530.

*James R. Cray*, with him *D. W. McDonald* and *McDonald & Cray*, for appellee.

Opinion by Morrison, J., July 18, 1912:

A careful examination of the testimony, findings of fact, decree, exceptions and opinion of the learned judge of the orphans' court, and the arguments of counsel, convinces us that this appeal is without merit.

We think the opinion of the learned judge sufficiently vindicates his decree and it is not considered necessary or profitable to add anything to what has been so well said by him.

The assignments of error are all dismissed and the decree is affirmed, at the cost of Martha Dixon, appellant.